UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DONALD LEWIS QUIMBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-01335-JMS-TAB |
| | ) | |
| CALIBER HOME LOANS, | ) | |
| JP MORGAN CHASE BANK N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS**

## I. Introduction

This is a case that exemplifies the proverb, "Two wrongs don't make a right." In 2008, Washington Mutual Home Loans erred in cashing Plaintiff Donald Lewis Quimby's mortgage payment, leading Washington Mutual to believe Quimby had a delinquent account. [Filing No. 1, at ECF p. 2-9.] Instead of correcting this error to reflect that the mortgage payment was proper, Washington Mutual and its later successors in interest, Defendants JP Morgan Chase Bank N.A. and Caliber Home Loans, charged late fees and other additional charges. [Filing No. 1, at ECF p. 9-28.] Rather than submit another mortgage payment to resolve the dispute, Quimby continually refused to repay the original mortgage payment and subsequent fees. As a result, a relatively simple mistake snowballed to over one thousand dollars in late fees and other charges, a notice of foreclosure, and this federal lawsuit.

Quimby asserts eight claims against Defendants. According to Quimby, Defendants committed invasion upon seclusion, intentional infliction of emotional distress, civil trespass, intrusion upon seclusion, and breached their duty of good faith and fair dealing in failing to

1

correct the mortgage payment error, making harassing collection calls, mishandling his escrow account, and engaging in other tortious conduct. Quimby also contends that Defendants' actions violated the Indiana Crime Victim's Relief Act, the Fair Debt Collection Practices Act, the Indiana Uniform Commercial Code, and the Real Estate Settlement Procedures Act. Defendants separately move to dismiss Quimby's complaint in its entirety for failing to state claims upon which relief may be granted. For the reasons set forth below, the Magistrate Judge recommends Defendant Chase's motion to dismiss [Filing No. 19] be granted in part and denied in part and Defendant Caliber's motion to dismiss [Filing No. 25] be granted in part and denied in part.

## II. Discussion

### A. Standard of review

Fed. R. Civ. P. 8 imposes a notice-pleading standard for a complaint, requiring a short and plain statement of the claim that the pleader asserts entitles him to relief. Under Fed. R. Civ. P. 12(b)(6) a complaint must contain sufficient factual allegations that, when accepted as true, state a claim to relief that is plausible on its face. *Aschcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when a plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Specific facts are not necessary. Plaintiff need only give defendant fair notice of what the claim is and the grounds upon which it rests. *Id.*

### B. Federal law claims

1. Real Estate Settlement Procedures Act claims against Caliber

Caliber seeks to dismiss Quimby's RESPA claims for three reasons. First, Caliber argues that it did not violate RESPA by failing to correct Quimby's account in response to Quimby's

qualified written request. According to Caliber, dismissal is appropriate because RESPA does

not obligate a servicer to correct an account in response to a qualified written request. Within

sixty days after receiving a qualified written request,[1] the servicer must take one of three actions:

(1) make the appropriate corrections to the account and notify the borrower of that correction; (2)

conduct an investigation into the borrower's account and provide the borrower an explanation as

to why the servicer believes the account is correct; or (3) investigate the borrower's account and

provide the information or explain why the requested information is not available. 12 U.S.C. §§

2605(e)(2)(A), (B) and (C); *Catalan, v. GMAC Mortg. Corp.,* 629 F.3d 676, 676 (7th Cir. 2011).

Caliber is correct that it was under no obligation to correct Quimby's account. RESPA

provides for three different responses to a qualified written request, one of which is to correct a

borrower's account. However, this fact is not fatal to Quimby's claim. Failure to properly

respond to Quimby's request is an issue of fact not to be resolved by a motion to dismiss. *See*

*Baehl v. Bank of America, N.A.,* No. 3:12-cv-00029-RLY-WGH, 2013 WL 1319635, at \*6 (S.D.

Ind. Mar. 29, 2013).

Second, Caliber moves to dismiss this RESPA claim because none of the facts alleges a

pattern or practice of non-compliance in violation of the statute. Relying on persuasive

authority, Caliber argues that a RESPA pattern or practice requires more than a possible

violation involving a single individual. *See Katz v. The Dime Savings Bank, FSB,* 992 F. Supp.

250, 258 (W.D.N.Y. 1997). However, *Katz* stands for the proposition that a pattern or practice

of noncompliance requires more than a single violation of the Act. It does not suggest that more

---

[1] RESPA defines a qualified written request as a "written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error." *Catalan v. GMAC Mortg. Corp.,* 629 F.3d 676, 676 (7th Cir. 2011).

than one individual must be affected in order to satisfy the statutory language. To be a pattern or practice of noncompliance, Quimby must allege Caliber violated RESPA in responding to a qualified written request on more than one occasion. Some courts have held that a pattern or practice requires more than two violations. *See Ploog v. HomeSide Lending, Inc.,* 209 F.Supp. 2d 863 (N.D. Ill. 2002) (finding five instances sufficient to be a pattern or practice of noncompliance under RESPA); *In re Thompson,* 350 B.R. 843, 852 (E.D. Wis. Sept. 22, 2006) (citing to persuasive authority holding two failures do not constitute a pattern or practice under RESPA); *see also Fournier v. Bank of America Corp.* No. 5:13-cv-00702, 2014 WL 421295, at *4 (N.D. N.Y. Feb. 2, 2014) (finding three instances of noncompliance with RESPA insufficient to establish a pattern or practice of noncompliance). Quimby's allegation that there was a pattern or practice of noncompliance is thin, but facially plausible. *Aschroft v. Iqbal,* 556 U.S. 662, 678 (2009). Quimby alleges two potential RESPA violations, and discovery may reveal additional violations so as to establish a pattern or practice. Thus, the Magistrate Judge recommends that Caliber's motion to dismiss Quimby's RESPA claim be denied.

Finally, Caliber argues that no facts alleged in the complaint support the claim that Caliber wrongfully notified credit reporting agencies of Quimby's delinquent payment. *See* 12 U.S.C. § 2605(e)(3). The Magistrate Judge agrees. The complaint's only reference to a credit reporting agency occurred in 2011, two years before Caliber became a successor in interest.[2] Thus, Quimby fails to assert sufficient factual allegations against Caliber to support his RESPA claim regarding credit reporting agencies under 12 U.S.C. § 2605(e)(3). The undersigned recommends Quimby's RESPA claim under 12 U.S.C. § 2605(e)(3) be dismissed, but his claim

---

[2] Quimby asserts that in 2011 his credit report listed the Chase mortgage account for the property as an adverse account. However, this credit report occurred while Chase serviced the mortgage, and Quimby asserts no RESPA claim against Chase.

under 12 U.S.C. § 2605(e)(2)(A) for engaging in a pattern or practice of improperly responding to his qualified written requests survive.

2.  Federal Debt Collector's Practices Act claim against Caliber

Quimby brings a claim under the FDCPA asserting that Caliber used unfair or unreasonable means to collect or attempt to collect on a debt.  Caliber argues that this claim should be dismissed because Caliber was not a debt collector so as to trigger the FDCPA. According to Caliber, Quimby defaulted on the mortgage after Caliber became the mortgage's servicer and therefore, Caliber is not subject to FDCPA regulations.  Relying on the terms of the mortgage, Quimby argues that default occurred when he failed to pay the full amount of his mortgage payment.  Under these circumstances, Quimby argues he defaulted before Caliber became a successor in interest, which makes Caliber a debt collector and subject to the FDCPA. Accepting Quimby's facts as true, he states an FDCPA claim upon which relief may be granted.

While Caliber argues that Quimby's FDCPA claim includes mere legal conclusions, Quimby's complaint provides sufficient factual allegations for this claim to survive a Rule 12(b)(6) challenge.  Under *Twombly,* the Court must consider Quimby's complaint in its entirety to determine whether the pleadings give defendant fair notice of what the claim is and the grounds upon which it rests.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Quimby's complaint refers to multiple mortgage statements from Caliber asserting delinquent payments.  Moreover, the complaint includes instances where Quimby attempted to pay off all delinquencies on his mortgage account, but Caliber refused to accept his payment.  [Filing No. 1, at ECF p. 17-26.]  Even after Caliber accepted Quimby's payment for the outstanding mortgage, Caliber billed Quimby for another monthly mortgage payment.  Quimby's complaint provides

fair notice of what his FDCPA claim is and the grounds upon which it rests.  Therefore Caliber's motion to dismiss this claim should be denied.

        3.       Failure to exhaust administrative relief

Chase argues that all of Quimby's claims must be dismissed because Quimby failed to exhaust all available administrative remedies through the FDIC before filing in federal court. Washington Mutual was placed in an FDIC receivership, and under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 any claims regarding Washington Mutual's acts must first be handled administratively through the FDIC.  12 U.S.C. § 1821(d)(13)(D)(ii). Chase relies on *Benson v. JP Morgan Chase Bank, N.A*., 673 F.3d 1207 (9th Cir. 2012), to assert that Quimby is precluded from bringing claims against Chase relating to an act by Washington Mutual.  *Benson* held that "FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution."  *Benson,* 673 F.3d at 1215.  To establish federal jurisdiction, plaintiff must show that he exhausted administrative relief through the FDIC.

Quimby argues that *Benson* does not jurisdictionally bar his claims because he alleges wrongful conduct independent from Washington Mutual's acts or omissions.  In *Benson*, the plaintiff asserted a claim against a failed bank's successor in interest because the successor in interest assumed the failed bank's liabilities.  However, Quimby makes no such claim.  Quimby argues that Chase is separately liable for wrongfully assessing late fees against Quimby and mishandling his escrow account despite knowing that Quimby timely tendered his mortgage payment to Washington Mutual.  Quimby pleads an allegation that speaks directly to Chase's conduct, not to the liabilities assumed by Chase as a successor in interest.  Thus, Quimby should not be required to exhaust his administrative remedies before bringing his claims to federal court.

*See Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1209 (9th Cir. 2012)* (finding no

requirement for plaintiff to exhaust administrative remedies for claims based on a purchasing

bank's post-purchase actions) *accord Farnik v. F.D.I.C., 707 F.3d 717, 723-24 (7th Cir. 2013).*

The Magistrate Judge finds Chase's argument fails.

    *C.  State law claims*

    1.        Intentional infliction of emotional distress claims against Caliber and Chase

    Quimby asserts several tort-related claims against Defendants Chase and Caliber,

including intentional infliction of emotional distress.[3]  Chase and Caliber argue that Quimby

failed to allege facts demonstrating extreme or outrageous conduct for an intentional infliction of

emotional distress claim.  The undersigned agrees.  To establish a claim for intentional infliction

of emotional distress, Quimby must prove (1) Defendants engaged in extreme and outrageous

conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another.

*Yates v. Martin*, No. 2:12-cv-367-RLM, 2014 WL 1259955, at *2 (N.D. Ind. Mar. 26, 2014).

---

[3]  Caliber asserts that Quimby's tort claims should be dismissed in their entirety because Quimby asserts economic damages arising out of a breach of contract that are more appropriately remedied through contract law.  The undersigned is not persuaded.  Based on the pleadings, the undersigned is not convinced that Quimby would be unable to establish any tort liability independent from the mortgage agreement so as to preclude his tort claims.  *See, e.g., Greg Allen Const. Co., Inc. v. Estelle, 798 N.E.2d 171, 173 (Ind. 2003)* (requiring conduct independent from a contract to establish a tort claim); *Free Methodist Church of North America v. Hayes*, No. 1:03-cv-2003-DFH-WTL, 2005 WL 3003239, at *3 (S.D. Ind. Nov. 8, 2005) ("The Seventh Circuit has repeatedly cautioned district judges not to be too quick to grant dismissals based on pleadings.").  When a Court rules on a motion to dismiss, it must "review the complaint to determine whether it contains enough facts to raise a reasonable expectation that discovery will reveal evidence to support liability for the wrongdoing alleged." *Adams v. City of Indianapolis, 742 F.3d 720, 729 (7th Cir. 2014)*.  Thus, the undersigned does not find it appropriate to dismiss all of Quimby's tort claims simply because contract law may be relevant to some of Quimby's claims.  The Court will review each claim separately to determine whether Quimby sufficiently pleaded the tortious allegations.

Indiana courts use a rigorous standard to establish extreme or outrageous conduct under intentional infliction of emotional distress. *Westminster Presbyterian Church of Muncie v. Yonghong Cheng,* 992 N.E.2d 859, 870 (Ind. Ct. App. 2013). Even a defendant who acts with an intent to commit a tort will not be liable under intentional infliction of emotional distress unless "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Quimby alleges that Chase's collection department harassed him with phone calls and sent him written correspondence "attempting to collect the alleged debt and/or advising Mr. Quimby of his delinquency." [Filing No. 1, at ECF p. 9.] This continued even after Quimby explained to Chase representatives that the alleged debt was in fact an error made by Washington Mutual in 2008. [Filing No. 1, at ECF p. 9.] Even accepting that Chase's phone calls and written communications were annoying and harassing, they were not beyond all possible bounds of decency or utterly intolerable to a civilized society so as to warrant an intentional infliction of emotional distress claim. *Curry v. Whitaker,* 943 N.E.2d 354 (Ind. Ct. App. 2011); *see Gable v. Curtis,* 673 N.E.2d 805, 810-11 (Ind. Ct. App. 1996) (finding several phone calls threatening the plaintiff over the course of an hour not so outrageous so as to sustain a cause of action for the intentional infliction of emotional distress).

The same is true of Caliber's conduct. Accepting Quimby's factual allegations as true, Caliber called and sent communications concerning his alleged debt, entered Quimby's property to change a lock on the side door, and placed stickers on the property's windows. These allegations simply are not enough for a reasonable fact finder to conclude that Caliber engaged in extreme and outrageous conduct under Indiana's rigorous standard for intentional infliction of emotional distress. *See Rihm v. Hancock County Public Library,* 954 F.Supp.2d 840, 858 (S.D.

Ind. 2013) (citing *Gable*, 673 N.E.2d at 810) ("[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). As a result, the undersigned recommends Chase's and Caliber's motions to dismiss Quimby's intentional infliction of emotional distress claims be granted.

        2.      Intrusion upon seclusion claims against Caliber and Chase

Chase argues that Quimby's claim of intrusion upon seclusion fails to state a claim upon which relief can be granted. Quimby asserts that Chase's harassing collection calls, report of an incorrect delinquent payment to a credit report agency, and written communications intruded on his right to emotional solitude. However, intrusion upon seclusion requires an intrusion upon plaintiff's physical solitude or seclusion by invading his home or conducting an illegal search. *Clark v. Nationwide Credit Inc.*, No. 1:08-cv-554-RLY-TAB, 2008 WL 4601582, at *2 (S.D. Ind. Oct. 16, 2008). While Indiana courts have not expressly rejected an intrusion on emotional seclusion cause of action, it is well established that Indiana courts narrowly construe intrusion upon seclusion to circumstances where there is a physical intrusion. *Sharkey v. Cochran*, No. 1:09-cv-0517-JMS-DKL, 2012 WL 967057, at *10 (S.D. Ind. Mar. 21, 2012) ("No Indiana cases exist in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home."); *Lemaster v. Spartan Tool, LLC*, No. 1:08-cv-00731-WTL-DML, 2009 WL 700240, at *4 (S.D. Ind. 2009). Thus, Chase's motion to dismiss this claim should be granted.

In contrast, Caliber's motion to dismiss Quimby's intrusion upon seclusion claim should be denied. Accepting Quimby's factual allegations as true, Caliber intruded on Quimby's property at least once to change a lock and place stickers on the windows. While Caliber asserts that the mortgage agreement granted its representatives access to the property, it did so only

under certain circumstances. Thus, a reasonable fact finder could conclude that Caliber representatives acting outside the scope of the mortgage agreement intruded on Quimby's physical solitude when they entered his property. Such circumstances would entitle Quimby to relief under intrusion upon seclusion. Accordingly, the undersigned recommends Caliber's motion to dismiss Quimby's intrusion upon seclusion claim be denied.

       3.      Breach of good faith and fair dealing claims against Caliber and Chase

Caliber and Chase argue that Quimby's breach of good faith and fair dealing claim must be dismissed because no fiduciary duty exists between a lender and borrower so as to entitle Quimby to relief. *Kruse v. National Bank of Indianapolis*, 815 N.E.2d 137, 148 (Ind. Ct. App. 2004) holds that a fiduciary relationship between a lender and borrower only exists when there is unequal bargaining power between the two parties and a relationship of trust and confidence has been established. *See Fifth Third Bank v. Double Tree Lake Estates, LLC,* No. 2:11-cv-0233-PPS-PRC, 2014 WL 3659780, at \*10 (N.D. Ind. July 23, 2014) ("The law is clear that an arms-length contractual relationship, like that between a lender and a borrower, does not create any special relationship."). No such circumstances exist here.

Notwithstanding, Quimby argues that Caliber and Chase were escrow agents that maintained and operated Quimby's escrow account. In this capacity, Chase and Caliber were in a fiduciary relationship with Quimby. *See Meridian Title Corp. v. Pilgrim Financing, LLC,* 947 N.E.2d 987, 992 (Ind. Ct. App. 2011); *Perron v. J.P. Morgan Chase Bank N.A.,* No. 1:12-cv-01853-TWP-TAB, 2014 WL 931897, at \*5 (S.D. Ind. Mar. 10, 2014). The complaint alleges that Chase and Caliber breached their fiduciary duties when they misappropriated funds furnished by Quimby for deposit into his escrow account. [Filing No. 36, at ECF p. 34.] Specifically, the complaint asserts that "Chase misappropriated funds furnished by regular

mortgage payments, property taxes and homeowner's insurance to pay for late fees and charges assessed due to Washington Mutual's account error." [Filing No. 1, at ECF p. 15, 21.] Likewise, Quimby demanded that Caliber not portion any of his mortgage payment to pay the fees and other charges on the account, but Caliber continued to do so. [Filing No. 1, at ECF p. 16.] A dispute between a borrower and an escrow agent about how funds are distributed does not necessarily rise to the level of a breach of the duty of good faith and fair dealing. An escrow agent seemingly has obligations associated with paying taxes and insurance that extend beyond the borrower. There is no suggestion here that the funds in question were used to fund obligations outside a traditional escrow arrangement. Nevertheless, at the motion to dismiss stage, Quimby's complaint provides sufficient factual allegations to put Chase and Caliber on notice of what his breach of good faith and fair dealing claims are and the grounds upon which they rest. The Magistrate Judge recommends Chase's and Caliber's motions to dismiss Quimby's breach of good faith and fair dealing claims be denied.

      4.      Civil trespass claim against Caliber

Caliber argues that Quimby's factual allegations do not establish a civil trespass claim and must be dismissed. Quimby contends that Caliber trespassed on his property when Caliber representatives replaced an existing deadlock on the property and placed stickers on the property's windows. [Filing No. 1, at ECF p. 19.] However, Caliber argues that the mortgage authorized Caliber to enter Quimby's property. Specifically, provision seven of the loan agreement permitted Caliber to do whatever was necessary to protect the value of the property if the borrower defaulted on the agreement, and provision nine of the mortgage loan agreement provided the lender or its agents reasonable entry upon and inspections of the property so long as the lender gave the borrower notice. Whether Caliber's entry onto the property was proper under

11

the mortgage agreement is a factual dispute that cannot be resolved by a motion to dismiss.

Under Fed. R. Civ. P. 12(b)(6), a plausible set of facts exist to support Quimby's claim. Thus,

the undersigned recommends Caliber's motion to dismiss Quimby's civil trespass claim be

denied.

       5.        Indiana Uniform Commercial Code claims against Chase and Caliber

Caliber seeks to dismiss the Indiana U.C.C. tender of payment claim because it is time

barred and Caliber's conduct was too far removed from the 2008 tender of payment. The

Indiana U.C.C. provides that if a borrower makes a tender of payment of an amount due on an

instrument to the lender, the borrower is under no obligation to pay interest after the due date on

the amount tendered. IND. CODE § 26-1-3.1-603(c). A claim to enforce this right must be filed

within three years after the cause of action accrues. IND. CODE § 26-1-3.1-118(g). Quimby filed

his claim six years after Washington Mutual erred in cashing Quimby's mortgage payment.

Nevertheless, Quimby argues that Chase and Caliber continued to charge interest, late fees, and

other fees on the payment properly tendered in March 2008, effectively tolling the statute of

limitations. Relying on the doctrine of continuing wrong, Quimby asserts that the statute of

limitations did not start to run until the wrongful act ceased, which presumably occurred when

Quimby paid off the mortgage and delinquent payments in 2014. *Boggs v. Tri-State Radiology,*

*Inc.*, 730 N.E.2d 692, 699 (Ind. 2000).

Caliber disagrees and claims that the statute of limitations began when the lender

received payment. In support, Caliber relies on *Farmers Elevator Co. of Oakville, Inc. v.*

*Hamilton,* 926 N.E.68 (Ind. Ct. App. 2010). While *Farmers* is not directly on point to Quimby's

case, it is instructive. *Farmers* held that the doctrine of continuing wrong did not apply to a

claim for money had and received because the statute of limitations started to run when the

creditor received the payment. *Farmers* noted that courts generally accept that the statute of

limitations for a claim for money had and received begins when the party against whom the

claim is asserted receives payment. For Quimby, Washington Mutual received the tendered

payment in 2008, five years before Caliber became a successor in interest. Like money had and

received, where the statute of limitations begins when the borrower submits a valid tender of

payment, the statute of limitations for Quimby's tender of payment logically started when

Washington Mutual received payment. Quimby asserts that there was continuing wrong that

occurred to support tolling the statute of limitations after receiving payment. Even assuming

Quimby's argument is true, Caliber's alleged wrongful acts did not occur until five years after

the original error was made. Thus, Caliber's actions are too far removed from the valid tender of

payment to support a claim under the Indiana U.C.C. and should be dismissed.

Chase seeks to dismiss Quimby's valid tender of payment claim under Indiana U.C.C.

because the tender of payment occurred before Chase serviced the loan. Moreover, Chase argues

that the payment was never processed, which justified the late fee charges.[4] Quimby's complaint

sufficiently alleges the tender of payment claim against Chase. Quimby asserts that he tendered

a valid payment in 2008 in a timely fashion. Shortly thereafter Chase acquired the mortgage and

charged interest and late fees (and continued to do so for four years), despite having knowledge

---

[4] Chase also argues that Quimby does not assert a valid cause of action because the Indiana U.C.C. indicates that a valid tender of payment discharges any interest a borrower would be entitled to pay after the due date. It mentions nothing about late fees and other charges. IND. CODE § 26-1-3.1-603(c). However, Quimby's complaint alleges that he was incorrectly charged miscellaneous fees, advances, and other charges as a result of Defendants' actions. This is sufficient to withstand a Rule 12(b)(6) challenge. [Filing No. 1, at ECF p. 12-13.] *See Aschcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (noting specific facts are not necessary to satisfy notice pleading). The undersigned finds Chase's argument an inadequate basis to support a motion to dismiss.

of Washington Mutual's service error.  Quimby's claim is plausible on its face so as to survive a Rule 12(b)(6) challenge.  As such, the undersigned recommends that Chase's motion to dismiss Quimby's tender of payment claim be denied, and Caliber's motion to dismiss this claim be granted.

> 6.      Indiana Crime Victim's Relief Act claims against Caliber and Chase

Caliber and Chase both seek to dismiss Quimby's claims that they violated the Indiana Crime Victim's Relief Act.  The Indiana Crime Victim's Relief Act provides damages if a person suffers pecuniary loss as the result of a violation of certain enumerated criminal code sections.  To prevail, a claimant must prove all of the elements of the alleged criminal act to recover in a civil action.  *Benhaugh v. Garner*, 876 N.E.2d 344, 349 (Ind. Ct. App. 2007).  Chase asserts that Quimby's claims under the Indiana Crime Victim's Relief Act should be dismissed because Quimby fails to state facts that support his allegations of criminal mischief, deception, and conversion.  IND. CODE §§ 35-43-5-3; 35-43-1-2(a)(2); 35-43-4-3.  Specifically, Chase contends Quimby fails to show any false or misleading statements made by Chase, that Chase knowingly or intentionally exerted unauthorized control over Quimby's property to satisfy the elements of conversion, or that Chase knowingly or intentionally caused Quimby to suffer a pecuniary loss by deception.

Accepting the facts in Quimby's complaint as true, Quimby references several mortgage statements from Chase that falsely allege late fees, despite Quimby notifying Chase of this error.  [Filing No. 1, at ECF p. 9-14.]  Moreover, Quimby asserts he suffered pecuniary losses including mileage and postage costs, valuable time spent, potential future income from money used to pay off the promissory note that he would not have had to pay if Chase corrected the error, and late fees and other charges Quimby paid.  *See Malcolm v. Trilithic, Inc.,* No. 1:13-cv-00073-SEB-

DKL, 2014 WL 1324082, at *10 (S.D. Ind. Mar. 31, 2014) ("Pecuniary loss is considered a loss

of money, or of something by which money, or something of money value may be acquired.").

These allegations are sufficient to allege that Chase had criminal intent required for deception

and criminal mischief.  *See* IND. CODE § 35-41-2-2(a) and (b); *Gordon v. Bank of New York*

*Mellon Corp,* 964 F.Supp.2d 937, 944 (N.D. Ind. 2013) (defining intentional conduct as when an

individual engages in conduct with a conscious objective to do so and knowing conduct as when

a person has a high probability of knowing he is engaging in certain conduct).  Moreover,

Quimby includes factual allegations that Chase mishandled his escrow account by allocating his

monthly mortgage payment to late fees and charges, which satisfies the elements of conversion.

Accordingly, Quimby properly asserts his claims of conversion, deception, and criminal mischief

against Chase under the Indiana Crime Victim's Relief Act.  The undersigned recommends

Chase's motion to dismiss these claims under the Indiana Crime Victim's Relief Act be denied.

Caliber also seeks to dismiss Quimby's claims under the Indiana Crime Victim's Relief

Act because Quimby is unable to prove that Caliber caused the harm that Quimby alleges.  As a

successor in interest, Caliber began servicing Quimby's mortgage five years after Washington

Mutual misapplied Quimby's mortgage payment.  Thus, Caliber alleges it did not commit

deception because it did not knowingly or intentionally make a false or misleading statement

with the intent to obtain property.  Nor did Caliber knowingly or intentionally cause Quimby to

suffer pecuniary losses due to deception under criminal mischief.  Caliber asserts that Quimby

cannot prove that Caliber knowingly or intentionally exerted unauthorized control over

Quimby's property, or that Caliber knowingly or intentionally interfered with Quimby's use of

property or damaged Quimby's property under criminal trespass and criminal mischief.  IND.

CODE §§ 35-43-2-2(a)(4), 35-43-1-2.  Caliber submits that causation does not exist separate from Washington Mutual.

The Magistrate Judge finds Quimby's complaint sufficiently pleads his claims against Caliber for the purposes of a Rule 12(b)(6) motion that are separate from Washington Mutual. Quimby alleges that Caliber improperly sent several written statements indicating a delinquent mortgage payment after Quimby notified Caliber that this was in error.  Moreover, Quimby's factual allegations show that Caliber refused to accept Quimby's payments for the entire amount outstanding on his mortgage and billed an additional mortgage payment after Quimby paid off his outstanding mortgage.  [Filing No. 1, at ECF p. 15-27.]  Consequently, Quimby suffered pecuniary loss due to Caliber's deception in the form of postage costs, value of time spent attempting to resolve the dispute, potential future income from money used to pay the promissory note's balance, and the cost of fuel and mileage.  These facts are sufficient at this stage to assert a deception claim and criminal mischief claim.  IND. CODE §§ 35-43-5-3; 35-43-1-2(a)(2).

The undersigned finds Quimby satisfies notice pleading for conversion under the Indiana Crime Victim's Relief Act.  IND. CODE § 35-43-4-3.  Quimby asserts that Caliber committed conversion two ways.  First, Quimby argues that Caliber knowingly or intentionally exerted unauthorized control over his property including escrow funds.  Quimby's complaint alleges that Caliber took unauthorized control of his property when it misused his monthly mortgage payment to pay unauthorized late fees and other charges.  Second, Quimby argues that Caliber committed conversion when it changed a deadlock on the property's side door and placed stickers on the windows.  The undersigned is not convinced that Quimby sufficiently pleads facts to support his claim that Caliber committed conversion by entering his property.  That said,

16

Quimby's allegation that Caliber committed conversion when it misused his escrow account is sufficiently pleaded and should survive Caliber's Rule 12(b)(6) challenge.

Quimby also alleges Caliber committed criminal trespass and criminal mischief (for property damage) under the Indiana Crime Victim's Relief Act. IND. CODE §§ 35-43-2-2(a)(4)[5], 35-43-1-2(a)(1).[6] However, these two allegations fail to state claims upon which relief may be granted. Quimby asserts that Caliber knowingly or intentionally interfered with Quimby's possession or use of property without his consent and recklessly, knowingly, or intentionally damaged Quimby's property without his consent. In support of these allegations, Quimby's complaint alleges that Caliber representatives replaced an existing deadlock and placed stickers on the property windows. Such conduct does not equate to the kind of property damage that entitles Quimby to relief under criminal mischief (for property damage). IND. CODE § 35-43-1-2(a)(1). Quimby indicates in his complaint that he continued to use and possess the property after Caliber representatives entered the property, replaced the side door deadlock, and placed stickers on the windows. As a result, Quimby fails to allege that Caliber interfered with his possession and use of property so as to entitle him to relief under criminal trespass. Thus, Quimby's claims for criminal trespass and criminal mischief (for property damage) under Indiana Crime Victim's Relief Act should be dismissed.

---

[5] Quimby cites to IND. CODE § 35-43-2-2(4) to support his claim for criminal trespass. The appropriate citation is IND. CODE § 35-43-2-2(a)(4).

[6] Quimby asserts two separate claims under criminal mischief. The first relates to a person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other perons's consent. IND. CODE § 35-43-1-2(a)(1). Quimby accuses Caliber of damaging his property without his consent under this statute. Quimby also asserts criminal mischief against Caliber and Chase for knowingly or intentionally causing another to suffer pecuniary loss by deception. IND. CODE § 35-43-1-2(a)(2). The undersigned distinguishes these two claims with the parenthetical (for property damage) to refer to IND. CODE § 35-43-1-2(a)(1).

## III.  Conclusion

For these reasons, the Magistrate Judge recommends that Chase's and Caliber's motions to dismiss [Filing No. 19, 25] be granted in part and denied in part.  The undersigned recommends Chase's motion to dismiss [Filing No. 19] be granted as to the following counts:

- Count IV: Intentional infliction of emotional distress; and

- Count V: Intrusion upon seclusion.

Chase's motion to dismiss should be denied as to the following counts:

- Count VI: Indiana Crime Victim's Relief Act;

- Count VII: Indiana U.C.C; and

- Count IX:  Breach of good faith and fair dealing.

The undersigned recommends that Caliber's motion to dismiss [Filing No. 25] be granted as to the following counts:

- Count I: RESPA under 12 U.S.C. § 2605(e)(3);

- Count IV: Intentional infliction of emotional distress;

- Count VI: Indiana Crime Victim's Relief Act for criminal mischief due to property damage and criminal trespass under Ind. Code §§ 35-43-1-2(a)(1), 35-43-2-2(a)(4); and

- Count VII: Indiana U.C.C.

Caliber's motion to dismiss should be denied as to the following counts:

- Count I: RESPA under 12 U.S.C § 2605(e)(2)(A);

- Count III: FDCPA;

- Count V: Intrusion upon seclusion;

- Count VI: Indiana Crime Victim's Relief Act for conversion, criminal mischief, and deception under Ind. Code §§ 35-43-5-3; 35-43-1-2(a)(2); 35-43-4-3;

- Count VII: Civil trespass; and

- Count IX: Breach of good faith and fair dealing.

Accordingly, the undersigned recommends Counts III, V, VII, IX, and part of Counts I and VI, against Caliber remain. Counts VI, VIII, and IX against Chase should remain.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 4/22/2015

_____

Tim A. Baker
U.S. Magistrate Judge
Southern District of Indiana

Distribution:

Robert C. Folland
BARNES & THORNBURG LLP
rob.folland@btlaw.com

Sujal M. Pandya
BARNES & THORNBURG LLP
Suj.pandya@btlaw.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP
djurkiewicz@boselaw.com

Nathan T. Danielson
BOSE MCKINNEY & EVANS, LLP
ndanielson@boselaw.com

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP
sgroth@boselaw.com

Lucius James Wallace
HUMPHREYS WALLACE HUMPHREYS PC
luke@hwh-law.com

Robert David Humphreys
HUMPHREYS WALLACE HUMPHREYS PC
david@hwh-law.com

Syed Ali Saeed
SAEED & LITTLE LLP
ali@sllawfirm.com