UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD LEWIS QUIMBY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| *vs*. ) | No. 1:14-cv-01335-JMS-TAB |
| ) | |
| CALIBER HOME LOANS and JP MORGAN CHASE ) | |
| BANK N.A., ) | |
| ) | |
| *Defendants*. ) | |

## ORDER

Defendants Caliber Home Loans ("Caliber") and JP Morgan Chase Bank N.A. ("Chase") both filed motions to dismiss Plaintiff Donald Lewis Quimby's claims. [*See* Filing No. 19; Filing No. 25.] The Court referred the motions to dismiss to the Magistrate Judge, who issued a Report and Recommendation on April 22, 2015. [Filing No. 52.] Both Mr. Quimby and Chase filed Objections to limited parts of the Report and Recommendation, [*see* Filing No. 53; Filing No. 54], and the Court has now considered both the Magistrate Judge's Report and Recommendation and the Objections.

### I.
### BACKGROUND

**A. Events Leading Up to the Lawsuit**

Mr. Quimby alleges that he purchased a property in Beech Grove, Indiana in 1993 (the "Property"), and took out a mortgage that was, at one point, serviced by Washington Mutual Home Loans ("Washington Mutual"). [Filing No. 1 at 2-3.] Mr. Quimby alleges that in February 2008, he sent two checks to Washington Mutual to cover the mortgage for March on the Property (the

"March 2008 Payment"), and also a mortgage on a neighboring property which he had purchased in 1983. Mr. Quimby alleges that Washington Mutual erroneously presented his March 2008 Payment to the wrong account – an account not owned by him – and the check was returned because the account was closed. [*See* Filing No. 1 at 4-6.] The check for the mortgage for the neighboring property was correctly processed. [Filing No. 1 at 5.]

This erroneous presentment of the March 2008 Payment triggered a series of events spanning several years. Specifically, Mr. Quimby alleges that:

- The mortgage on the Property was marked past due, and he began incurring late fees;

- He made various telephone calls to Washington Mutual and to his bank, Financial Center Federal Credit Union ("FCFCU"), to try to resolve the dispute;

- Washington Mutual sent Mr. Quimby a "Notice of Collection Activity";

- Washington Mutual never processed the March 2008 Payment, and Mr. Quimby refused to send another check because he was concerned it would result in a double payment;

- Washington Mutual engaged in various debt collection attempts;

- Chase acquired Washington Mutual's assets in 2008, and began attempting to collect the late mortgage payment from Mr. Quimby in early 2009;

- Mr. Quimby continued to incur late fees related to the March 2008 Payment;

- In 2011, the mortgage on the Property was listed as an adverse account on Mr. Quimby's credit report, due to the March 2008 Payment;

- In 2013, Caliber[1] began servicing the mortgage on the Property, and notified Mr. Quimby that if he did not bring his account current, it would continue collection efforts and initiate foreclosure proceedings;

- Mr. Quimby corresponded with Caliber regarding the March 2008 Payment and explained why his account appeared to be delinquent;

---

[1] Caliber was initially known as Vericrest Financial, Inc., but became Caliber later in 2013. [Filing No. 1 at 16.]

2

- In late 2013, Caliber's representatives entered the Property, replaced the locks, and placed stickers on the windows, and continued to enter the Property several times thereafter;

- Various issues arose with Mr. Quimby's payments to Caliber, including Caliber returning payments because they were insufficient to cure the default;

- In 2014, Caliber filed a foreclosure lawsuit against Mr. Quimby; and

- Mr. Quimby ultimately paid off the loan in full to avoid the potential consequences of the foreclosure lawsuit.

[Filing No. 1 at 4-28.]

### B. The Lawsuit

Mr. Quimby filed this lawsuit against Caliber and Chase on August 13, 2014, asserting the following claims against Caliber and Chase: (1) intentional infliction of emotional distress; (2) intrusion upon seclusion; (3) damages under the Indiana Crime Victim's Relief Act ("ICVRA"); (4) violation of Indiana Code § 26-1-3.1-603(c) (the "Indiana UCC"); and (5) breach of the duty of good faith and fair dealing.  He also asserts the following claims against Caliber only: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"); (2) violation of the Fair Debt Collection Practices Act ("FDCPA"); and (3) civil trespass.

### C. The Report and Recommendation

Both Caliber and Chase filed motions to dismiss all of Mr. Quimby's claims against them. [Filing No. 19; Filing No. 25.]  The Court referred the motions to the Magistrate Judge, who issued a Report and Recommendation on April 22, 2015 finding that both motions should be granted in part and denied in part.  [Filing No. 52.]  Both Mr. Quimby and Chase filed Objections to certain portions of the Report and Recommendation.  [*See* Filing No. 53; Filing No. 54.]  Mr. Quimby objects to the Magistrate Judge's finding that his claim for violation of the Indiana UCC against Caliber should be dismissed because it is time-barred, [Filing No. 53 at 2-4], and Chase objects to

the Magistrate Judge's rejection of its failure to exhaust administrative remedies argument, [Filing No. 54 at 2-11].  The Court discusses each Objection below.

## II.
### STANDARD OF REVIEW

Fed. R. Civ. P. 72 provides that for dispositive motions, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  The motions to dismiss are dispositive motions so, accordingly, the Court will apply the de novo standard to the portions of the Magistrate Judge's Report and Recommendation to which Mr. Quimby and Caliber have objected.  *Id.*

## III.
### MR. QUIMBY'S OBJECTION

Mr. Quimby objects to the Magistrate Judge's finding that Mr. Quimby's claim under the Indiana UCC against Caliber is time-barred because the statute of limitations began running when Mr. Quimby tendered the March 2008 Payment.  [Filing No. 53 at 2-4.]  As to Mr. Quimby's Indiana UCC claim against Caliber, the Magistrate Judge stated:

> Caliber seeks to dismiss the Indiana U.C.C. tender of payment claim because it is time barred and Caliber's conduct was too far removed from the 2008 tender of payment.  The Indiana U.C.C. provides that if a borrower makes a tender of payment of an amount due on an instrument to the lender, the borrower is under no obligation to pay interest after the due date on the amount tendered.  Ind. Code § 26-1-3.1-603(c).  A claim to enforce this right must be filed within three years after the cause of action accrues.  Ind. Code § 26-1-3.1-118(g).  Quimby filed his claim six years after Washington Mutual erred in cashing Quimby's mortgage payment….Relying on the doctrine of continuing wrong, Quimby asserts that the statute of limitations did not start to run until the wrongful act ceased, which presumably occurred when Quimby paid off the mortgage and delinquent payments in 2014….

4

> *Farmers* [*Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68 (Ind. Ct. App. 2010)] held that the doctrine of continuing wrong did not apply to a claim for money had and received because the statute of limitations started to run when the creditor received the payment. *Farmers* noted that courts generally accept that the statute of limitations for a claim for money had and received begins when the party against whom the claim is asserted receives payment. For Quimby, Washington Mutual received the tendered payment in 2008, five years before Caliber became a successor in interest. Like money had and received, where the statute of limitations begins when the borrower submits a valid tender of payment, the statute of limitations for Quimby's tender of payment logically started when Washington Mutual received payment. Quimby asserts that there was continuing wrong that occurred to support tolling the statute of limitations after receiving payment. Even assuming Quimby's argument is true, Caliber's alleged wrongful acts did not occur until five years after the original error was made. Thus, Caliber's actions are too far removed from the valid tender of payment to support a claim under the Indiana U.C.C. and should be dismissed.

[Filing No. 52 at 12-13.]

Mr. Quimby argues that the Magistrate Judge's finding that the statute of limitations on his Indiana UCC claim against Caliber has run is erroneous because his claim is not analogous to the money-had-and-received claim at issue in *Farmers*, and because the actionable acts in connection with Mr. Quimby's Indiana UCC claim are Caliber's charging of interest rates related to the March 2008 Payment and his payment of the interest, late fees, and charges related to that payment. [Filing No. 53 at 2-3.] Therefore, Mr. Quimby argues, the statute of limitations on his Indiana UCC claim – which he states is three years – did not begin to run until the date of collection attempts made by Caliber to collect interest related to the March 2008 Payment and/or the date on which Mr. Quimby paid interest, late fees, and charges related to the March 2008 Payment. [Filing No. 53 at 3.] Mr. Quimby also argues that the statute of limitations began to run anew each time Caliber charged interest and fees related to the March 2008 Payment. [Filing No. 53 at 3-4.]

Caliber responds that the relevant focus when applying the statute of limitations for an Indiana UCC claim is "when the actionable event triggering plaintiff's rights under the [Indiana UCC] occurs." [Filing No. 56 at 2 (emphasis omitted).] Caliber contends that the triggering event

5

here was when Mr. Quimby first made the March 2008 Payment, and that Mr. Quimby's focus on when he was damaged (*i.e.*, when Caliber charged him interest and fees after the March 2008 Payment was considered delinquent) is improper. [Filing No. 56 at 2.] Caliber notes that over six years have passed since the March 2008 Payment, and that Mr. Quimby does not cite any authority for the proposition that "Caliber's independent actions revive the statute of limitations…." [Filing No. 56 at 3-4.] Caliber also argues that it had no duty to remedy an error made by another servicer, and could not have presented Mr. Quimby's check for payment because it was never given a check. [Filing No. 56 at 5-6.]

      The Magistrate Judge relied on *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68 (Ind. Ct. App. 2010), in finding that the statute of limitations on Mr. Quimby's Indiana UCC claim began to run when Mr. Quimby tendered the March 2008 Payment. [Filing No. 52 at 12-13.] In *Farmers*, the plaintiff asserted a claim for money had and received related to payments that had been made on promissory notes that he executed to compensate a co-op for failing to provide it with grain he had contracted to supply. *Id.* at 72. The Indiana Court of Appeals held that the plaintiff's cause of action accrued when he made the payments on the promissory notes, "irrespective of his knowledge or discovery of injury." *Id.* at 78. It also held that the doctrine of "continuing wrong" – which provides that the statute of limitations does not begin to run until the wrongful act ceases – did not apply to claims for money had and received. *Id.* at 78-79. It ultimately concluded that the statute of limitations barred plaintiff's money had and received claim because all of the payments on the promissory notes were made outside of the three-year limitations period.

      Here, the statute Mr. Quimby relies upon is distinguishable from a money had a received claim. Specifically, Indiana Code § 26-1-3.1-603(c) provides that:

6

> If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is considered to have made tender of payment on the due date to the person entitled to enforce the instrument.

Unlike the money had and received claim in *Farmers*, which was predicated on the defendant's receipt of plaintiff's promissory note payments, Mr. Quimby's Indiana UCC claim relates to Caliber's imposition of late fees, interest, and other charges associated with the March 2008 Payment. [*See* Filing No. 1 at 35 ("Defendants violated Sec. IC 26-1-3.1-603(c) when….Defendants and its agents charged Mr. Quimby late fees, interest and other charges for failing to make a timely payment in March 2008").] Accordingly, the Court finds that the statute of limitations on that claim began to run when Caliber began charging late fees, interest and other charges related to the March 2008 Payment, and not when Mr. Quimby initially made that payment. Indeed, Caliber had no involvement with the mortgage on the Property in March 2008, so Mr. Quimby could not have asserted a claim against Caliber at that early date anyway. The earliest Mr. Quimby's claim against Caliber related to its attempts to collect interest and other charges could have accrued, as alleged in the Complaint, was in April 2013, when Caliber began servicing Mr. Quimby's mortgage on the Property. [*See* Filing No. 1 at 15-16 (Vericrest took over servicing Mr. Quimby's loan, and is now known as Caliber).]

Because the Court finds that Mr. Quimby's Indiana UCC claim against Caliber began accruing in April 2013 at the earliest, and since Mr. Quimby initiated the lawsuit in August 2014 (well within the three-year statute of limitations), it need not consider Mr. Quimby's alternative argument that the claim accrued when he actually paid the interest, late fees, and charges related to the March 2008 Payment, or his argument that the statute of limitations ran anew with each

7

violation by Caliber. The Court **SUSTAINS** Mr. Quimby's Objection, and finds that his Indiana UCC claim is not time-barred and, therefore, should not be dismissed.[2]

## IV.
### CHASE'S OBJECTION

Chase argued in its Motion to Dismiss that all of Mr. Quimby's claims should be dismissed because they are really based on Washington Mutual's actions, Washington Mutual was placed into an FDIC receivership, and Mr. Quimby failed to exhaust all available administrative remedies with the FDIC before initiating this lawsuit. Chase objects to the Magistrate Judge's rejection of that argument.

In his Report and Recommendation, the Magistrate Judge found that the cases relied upon by Chase are distinguishable from the situation here because Mr. Quimby "argues that Chase is separately liable for wrongfully assessing late fees against Quimby and mishandling his escrow account despite knowing that Quimby timely tendered his mortgage payment to Washington Mutual. Quimby pleads an allegation that speaks directly to Chase's conduct, not to the liabilities assumed by Chase as a successor in interest." [Filing No. 52 at 6.]

In its Objection, Chase relies upon two cases in particular, and argues that Mr. Quimby's claims are premised on Washington Mutual's actions because "[n]o action on the part of Chase created the delinquency [on Mr. Quimby's mortgage account]," and "there is not a single allegation in the Complaint against Chase that is not 100% dependent on the delinquency that was created in

---

[2] Caliber also argues that, in any event, Mr. Quimby does not properly state an Indiana UCC claim against it because Caliber could not have presented the March 2008 Payment for payment since it did not begin servicing the loan until 2013, and "it is undisputable that Caliber's actions in servicing Plaintiff's loan were 100% correct based upon the actual payments made by Plaintiff." [Filing No. 56 at 5-6.] As the Court has already found, the focus of Mr. Quimby's Indiana UCC claim is Caliber's pursuit of interest and late fees in connection with the March 2008 Payment. Mr. Quimby's allegations that Caliber wrongfully attempted to collect those amounts after he made the March 2008 Payment are enough to withstand a motion to dismiss.

8

March 2008." [Filing No. 54 at 8.] Chase accuses Mr. Quimby of "strategic pleading," and argues that any allegations he does assert against Chase can be traced back to Washington Mutual's conduct. [Filing No. 54 at 9-10.]

Mr. Quimby responds that case law actually supports his position that exhaustion is not required, because the cases Chase relies upon involved situations where the plaintiff did not allege any specific, separate wrongdoing against the defendant. Here, Mr. Quimby argues, the Complaint contains specific allegations of wrongdoing committed by Chase, related to its failure to rectify the erroneous presentment of the March 2008 Payment and its continued charging of late fees, interest, and other charges. [Filing No. 55 at 3.] Mr. Quimby also points to allegations in the Complaint related to Chase's handling of his August 2011 and September 2011 mortgage payments. [Filing No. 55 at 3.]

12 U.S.C. § 1821(d)(13)(D)(ii) provides that "[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over – any claim relating to any act or omission of such institution [in receivership] or the Corporation as a receiver." Chase argues that Mr. Quimby's claims against it should be dismissed because they are all predicated on Washington Mutual's actions, an entity that is now in receivership with the FDIC, so Mr. Quimby was required to exhaust administrative remedies with the FDIC. [Filing No. 54 at 8-11.] It relies upon two cases to support its exhaustion argument – *Farnik v. F.D.I.C.*, 707 F.3d 717, 720-21 (7th Cir. 2013), and *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207 (9th Cir. 2012). *Farnik* involved claims against a successor in interest to a bank in FDIC receivership relating to that bank's charging of interest rates the plaintiff claimed were improper. The *Farnik* Court found that the complaint named the defendant only as a successor in interest to the original bank, made "no effort to differentiate the actions of the two banks," and did not identify any independent wrongdoing on the part of the

9

successor in interest. 707 F.3d at 723-24. Similarly, the *Benson* Court found that the plaintiffs were required to exhaust administrative remedies with the FDIC when "the claim [against the defendant] is based on the conduct of the failed institution." 673 F.3d at 1214. It noted that "claims based on a purchasing bank's post-purchase actions" are not subject to the exhaustion requirement, but that plaintiffs' claims were "conclusory" and "based almost exclusively on alleged malfeasance by [the original bank]," and that the defendant assumed the original bank's liabilities. *Id.* at 1215. Accordingly, the *Benson* Court held, the plaintiffs had to exhaust administrative remedies with the FDIC.

The Court agrees with the Magistrate Judge's finding that here, unlike in *Farnik* and *Benson*, Mr. Quimby alleges distinct wrongdoing on the part of Chase. These allegations include that:

- Mr. Quimby repeatedly requested that Chase investigate Washington Mutual's treatment of the March 2008 Payment, but Chase instead continued to attempt to collect the payment, plus interest and other fees, [Filing No. 1 at 9-13]; and

- Mr. Quimby requested that Chase stop reporting the March 2008 Payment as late to the credit reporting agencies, but the mortgage account continued to be listed as adverse despite Mr. Quimby's request, [Filing No. 1 at 13-14].

Essentially, Mr. Quimby alleges that Chase had an opportunity to take action to fix Washington Mutual's mistake and, through its own independent actions, chose not to do so. The Court agrees with the Magistrate Judge that this is enough to allege independent acts on Chase's part, such that Mr. Quimby did not need to exhaust administrative remedies due to Washington Mutual's receivership. Accordingly, Chase's Objection is **OVERRULED** and Mr. Quimby's claims against Chase will not be dismissed for failure to exhaust administrative remedies.

## V.
### CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Mr. Quimby's Objection related to his Indiana UCC claim, [Filing No. 53], and **OVERRULES** Chase's Objection related to its exhaustion of administrative remedies argument, [Filing No. 54]. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation, except for the portion regarding Mr. Quimby's Indiana UCC claim, and **ORDERS** as follows:

- The following claims are dismissed:
    - Violation of RESPA under 12 U.S.C. § 2605(e)(3) against Caliber;
    - Intentional infliction of emotional distress against both Caliber and Chase;
    - Intrusion upon seclusion against Chase;
    - Damages under the ICVRA for criminal mischief due to property damage and criminal trespass against Caliber; and

- The following claims will proceed to trial:
    - Violation of RESPA under 12 U.S.C. § 2605(e)(2)(A) against Caliber;
    - Violation of the FDCPA against Caliber;
    - Intrusion upon seclusion against Caliber;
    - Violation of the Indiana UCC against Caliber and Chase;
    - Damages under the ICVRA against Chase, and against Caliber for conversion, criminal mischief, and deception;
    - Civil trespass against Caliber; and
    - Breach of the duty of good faith and fair dealing against both Caliber and Chase.

**IT IS SO ORDERED**.

Date: June 16, 2015

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**